IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| HILDA CURET-VELÁZQUEZ, EDUARDO CURET-VELÁZQUEZ, and HILDA VELÁZQUEZ-COTO,<br><br>Plaintiffs,<br><br>v.<br><br>ACEMLA DE PUERTO RICO, INC. and LATIN AMERICAN MUSIC CO., INC.,<br><br>Defendants. | CIVIL NO. 06-1014 (ADC/BJM) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**RE: RULE 56 MOTION FOR SUMMARY JUDGMENT**

**PROCEDURAL BACKGROUND**

Plaintiffs Hilda Curet-Velázquez, Eduardo Curet-Velázquez, and Hilda Velázquez-Coto ("plaintiffs") filed a complaint against defendants ACEMLA de Puerto Rico, Inc. and Latin American Music Co., Inc. ("LAMCO") (collectively, "LAMCO defendants," or "defendants") for, *inter alia*, copyright infringement. (Docket No. 1). Plaintiffs' copyright claims arise under the Copyright Act of 1976, as amended, 17 U.S.C. § 101, *et seq*. ("Copyright Act"). Before the court are plaintiffs' two motions for summary judgment on the copyright infringement claims relating to four musical compositions[1] (Docket No. 12, 55), defendants' opposition to those motions (Docket No. 33, 60), as well as the reply and sur-reply to the first motion (Docket No. 41, 46).

The case was assigned to me for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1). (Docket No. 62). For the reasons that follow, I recommend that plaintiffs' motions be

---

[1]The first motion for summary judgment only encompasses copyright violations regarding one song – *Pueblo Latino* – while the second motion moves for summary judgment on copyright violations regarding four songs – *Distinto y Diferente*, *Periódico de Ayer*, *Planté Bandera*, and *Pueblo Latino*. (Docket No. 12, 55). The two motions will be treated together in this Report and Recommendation.

**Hilda Curet-Velázquez, et als v. ACEMLA de P.R, et al**  Page 2
**Civil No. 06-1014 (ADC/BJM)**
**Report and Recommendation**

**granted** in part and **denied** in part.

## FACTUAL BACKGROUND

The evidentiary record, when viewed as it must be in the light most favorable to the nonmoving party, admits of the following facts.

Catalino "Tite" Curet-Alonso was a Puerto Rican songwriter who penned *Pueblo Latino*, *Distinto y Diferente*, *Periódico de Ayer*, and *Planté Bandera*. (Docket No. 55, Exh. 1-4). Mr. Curet-Alonso passed away on August 5, 2003, leaving three heirs; Hilda Curet-Velázquez, Eduardo Curet-Velázquez, and Hilda Velázquez-Coto. (Docket No. 1, ¶¶ 4, 9).

In 1975, Mr. Curet-Alonso assigned *Pueblo Latino* and *Planté Bandera* to Fania Publishing Co. Inc. ("Fania") during the original copyright terms. (Docket No. 12, Exh. G; Docket No. 55, Exh. 3, 4); see also Latin American Music Co., Inc. v. Archdiocese of San Juan, No. 96-2312, Docket No. 334, p. 272-73 (D.P.R. filed May10, 2004) ("LAMCO I") ("Fania became the initial owner of the statutory copyright upon its inception."), *adopted by* Latin American Music Co., Inc. v. Archdiocese of San Juan, 2005 WL 1847013 (D.P.R. August 2, 2005) ("LAMCO II"), *aff'd*, 499 F.3d 32 (1st Cir. 2007). Hilda Curet-Velázquez filed renewal registrations on December 31, 2003, for both songs, which were granted.[2] (Docket No. 55, Exh. 3, 4).

In 1977, Mr. Curet-Alonso assigned *Distinto y Diferente* and *Periódico de Ayer* to Fania Publishing Co. Inc. during the original copyright terms. (Docket No. 55, Exh. 1, 2); see also LAMCO I, No. 96-2312, Docket No. 334, p. 260, 271 ("Fania became the initial owner of the statutory copyright upon its inception"), *adopted by* LAMCO II, 2005 WL 1847013, *aff'd*, 499 F.3d 32 (1st Cir. 2007). Hilda Curet-Velázquez filed renewal registrations on February 2, 2005, for both songs, which were granted.[3] (Docket No. 55, Exh. 1, 2).

---

[2]The timeliness of Ms. Curet-Velázquez's renewal registration on December 31, 2003, is not contested by defendants, and renewal was accepted by the U.S. Copyright office.

[3]The timeliness of Ms. Curet-Velázquez's renewal registration on February 2, 2005, is not contested by defendants, and renewal was accepted by the U.S. Copyright office.

**Hilda Curet-Velázquez, et als v. ACEMLA de P.R, et al**                                Page 3
**Civil No. 06-1014 (ADC/BJM)**
**Report and Recommendation**

      Notwithstanding the prior assignments to Fania, Mr. Curet-Alonso also assigned the rights to all four songs to LAMCO in 1995. (Docket No. 33, Exh. 2). Pursuant to this assignment, LAMCO registered all four songs with the U.S. Copyright Office. (Docket No. 60, Exh. 2 (*Distinto y Diferente*); Exh. 3 (*Periódico de Ayer* and *Planté Bandera*); Exh. 4 (*Pueblo Latino*); see also Docket No. 60-2, ¶ 4 ("LAMCO also registered copyright ownership to 'Planté Bandera' and 'Pueblo Latino' in 1997 ... pursuant to Mr. Curet's assignment.")).

      On January 14, 2004, two weeks after filing the renewal registrations for *Pueblo Latino* and *Planté Bandera*, Ms. Curet-Velázquez wrote a letter to LAMCO requesting information concerning her father's music, which stated, "In regards to the royalties please send them to me at my address." (Docket No. 60, Exh. 5 (judge's translation)).

      In September of 2004, Hilda Curet-Velázquez found out about an upcoming concert at Hostos Community College in New York that was going to feature performances of songs written by Tite Curet-Alonso. (Docket No. 33, Exh. 6, p. 43-44). Ms. Curet-Velázquez contacted Mario Torres – who was in charge of organizing the concert under the corporate name Mavi Music Series – and spoke with him briefly. Id.; (Docket No. 12, Exh. B). For reasons unclear from the record, Mr. Torres asked for ACEMLA's telephone number and Ms. Curet-Velázquez gave it to him. (Docket No. 33, Exh. 6, p. 43-44). The concert took place on or about September 25, 2004, and was subsequently re-broadcast on Direct TV on channel 438 (the network known as HITN). (Docket No. 12, Exh. C, ¶¶ 2-3). In September or October of 2004, someone from Mavi Music Series contacted LAMCO regarding the Hostos Community College concert (Docket No. 33, Exh. 7, ¶ 8), and on or about December 11, 2004, ACEMLA issued a retroactive license to Mavi Music Series in connection with the concert at the Hostos Community College. (Docket No. 1, ¶ 13; Docket No. 12, Exh. B).

      The LAMCO defendants have authorized the Harry Fox Agency to act as its agent in granting mechanical licenses for songs it registers with that agency. (Docket No. 55, Exh. 5, p. 55). LAMCO added *Pueblo Latino* to its registrations with the Harry Fox Agency after registering its purported

**Hilda Curet-Velázquez, et als v. ACEMLA de P.R, et al**                                                                Page 4
**Civil No. 06-1014 (ADC/BJM)**
**Report and Recommendation**

copyright in 1997. (Docket No. 55, Exh. 18 (registration of June 10, 2003); Docket No. 60, Exh. 5 (registration of October 19, 1998)). The song remains registered with the Harry Fox Agency and is available for licensing on behalf of the LAMCO defendants. (Docket No. 60-2, ¶ 26). In July 2002, the Harry Fox Agency blocked two manufactures' – Disco Hit's and Sonido Inc.'s – ability to obtain licenses for LAMCO's shares of the compositions in its catalogue. (Docket No. 60, Exh. 6). On or about November 5, 2004, the LAMCO defendants, through their agent the Harry Fox Agency, issued a license to MSI of Miami Corporation for the song *Pueblo Latino* to be included on the album "Live at Yankee Stadium V.1." (Docket No. 55, Exh. 18, 19).

Plaintiffs have submitted computer- and webpage-printouts attesting to alleged licenses for *Pueblo Latino* issued by the Harry Fox Agency on behalf of LAMCO to MSI Miami Corporation on October 18, 2006, and to Listen.com for the same song on April 28, 2005. (Docket No. 55, Exh. 20, 21; see also Docket No. 56, ¶¶ 24, 25). Plaintiffs also submitted webpage printouts attesting to the alleged fact that two albums containing the song *Pueblo Latino* continue to be sold as a result of LAMCO licenses. (Docket No. 55, Exh. 23, 24). The defendants object to each of these items of evidence on hearsay and authenticity grounds. (Docket No. 60-2, ¶¶ 24, 25).

The LAMCO defendants added *Planté Bandera*, *Periódico de Ayer*, and *Distinto y Diferente* to its registrations with the Harry Fox Agency at some point after registering the purported copyrights (Docket No. 55, Exh. 5, p. 55-57; Docket No. 60-2, ¶ 9; Docket No. 60-8), and the songs remain registered with the Harry Fox Agency and are available for licensing on behalf of the LAMCO defendants (Docket No. 55, Exh. 5, p. 56; Docket No. 60-2, ¶¶ 13, 19, 29).

Plaintiffs allege that the LAMCO defendants, through the Harry Fox Agency, issued the following licenses for *Planté Bandera*: to the Ruckus Network on September 24, 2004; to the Microsoft Corporation on July 10, 2005; and to Rowe International, Inc. on November 29, 2005. (Docket No. 55, Exh. 13-15; Docket No. 56, ¶¶ 16-18). But the defendants object to the evidence submitted in support of these assertions – consisting of computer- and webpage-printouts – on

hearsay and authenticity grounds. (Docket No. 60-2, ¶¶ 16-18). Plaintiffs also submitted a LAMCO royalty report containing several listings for *Planté Bandera* and *Periódico de Ayer*. (Docket No. 55, Exh. 17). Luis Raul Bernard, President of LAMCO (see Docket No. 33-8), testified that this royalty report does indeed show royalties being paid to LAMCO for these two songs and that such payments indicate that LAMCO had been granted licenses for the recordings shown of those songs (Docket No. 55, Exh. 5, p. 54-55). He further testified that each song listing represents a distinct recording of the song, and that the reports reported from "different record companies." Id.

Plaintiffs submitted computer printouts attesting to the fact that the LAMCO defendants, through the Harry Fox Agency, issued the following licenses for *Distinto y Diferente*: to Rowe International, Inc. on July 6, 2005; to the Microsoft Corporation on July 17, 2005; and to Napster, LLC on August 22, 2006. (Docket No. 55, Exh. 7-9; Docket No. 56, ¶¶ 10-12). Plaintiffs also submitted a webpage printout attesting that copies of the album "Distinto, Diferente," containing the songs *Distinto y Diferente* and *Planté Bandera*, continue to be offered for sale pursuant to the LAMCO defendants' licenses. (Docket No. 56, ¶ 14). But the defendants object to these items of evidence on hearsay and authenticity grounds. (Docket No. 60-2, ¶¶ 10-12, 14). Defendants further object to the averments regarding *Distinto y Diferente* in that several of plaintiffs' averments involve alleged licenses of a song titled "Distinto, Diferente," which defendants claim may actually refer to a song of that name by Villa De Marcos or Villa Gonzalez, and not to *Distinto y Diferente* by Mr. Curet-Alonso. (Docket No. 60, ¶ 22; Docket No. 60-10).

**STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining if

**Hilda Curet-Velázquez, et als v. ACEMLA de P.R, et al**  Page 6
Civil No. 06-1014 (ADC/BJM)
Report and Recommendation

a material fact is "genuine," the court does not weigh the facts but, instead ascertains whether the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; Leary v. Dalton, 58 F.3d 748, 751 (1st Cir. 1995).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] ... which it believes demonstrate the absence of a genuine issue of material fact." Crawford-El v. Britton, 523 U.S. 574, 600 n.22 (1998), *quoting* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once this threshold is met, the burden shifts to the nonmoving party. The nonmovant may not rest on mere conclusory allegations or wholesale denials. Fed.R.Civ.P. 56(e); Libertad v. Welch, 53 F.3d 428, 435 (1st Cir. 1995). Instead, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Further, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsuchita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Importantly, parties may rely only on admissible evidence at the summary judgment stage. See Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000) ("To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e).... [T]he affidavit [must] be made on personal knowledge, set forth facts that would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein.") (internal quotations omitted). Of course, the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party." Leary, 58 F.3d at 751.

## DISCUSSION

Plaintiffs move for summary judgment on the copyright infringement claims regarding *Pueblo Latino*, *Planté Bandera*, *Periódico de Ayer*, and *Distinto y Diferente*. Their motion avers willful infringement as to all four songs. To prevail, plaintiffs must demonstrate an absence of a genuine issue of material fact as to: 1) their ownership of the copyrights; 2) defendants'

Case 3:06-cv-01014-ADC-BJM   Document 66   Filed 11/21/07   Page 7 of 18

**Hilda Curet-Velázquez, et als v. ACEMLA de P.R, et al**                                              Page 7
Civil No. 06-1014 (ADC/BJM)
**Report and Recommendation**

infringement; and 3) the "willfulness" of any such infringement. Johnson v. Gordon, 409 F.3d 12, 17 (1st Cir. 2005) ("two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original"); 17 U.S.C. § 504(c)(2) (discussing willfulness). Each element will be discussed below in turn.

**I.      Ownership**

To establish copyright infringement, a plaintiff must first demonstrate ownership of a valid copyright. Johnson, 409 F.3d at 17, see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). The burden of proof is borne by the plaintiff. Grubb v. KMS Patriots, L.P., 88 F.3d 1, 3, 5 (1st Cir. 1996).

Any copyright in its first term as of January 1, 1978 shall endure for 28 years from the date it was originally secured. 17 U.S.C. § 304. The copyright can be renewed by the author or, in the case of the author's death, the author's heirs for a term of 67 years. 17 U.S.C. § 304(a)(1)(B)-(C); see also 17 U.S.C. § 304(a)(2)(B) (providing for automatic renewal in the absence of renewal registration). Registration with the U.S. Copyright Office is *prima facie* evidence of copyright ownership, and shifts the burden to the adverse party to demonstrate why the copyright is not valid. Lotus Dev. Corp. v. Borland Int'l, Inc., 49 F.3d 807, 813 (1st Cir. 1995).

In this case, the ownership of the original copyright term for all four songs was determined in LAMCO II and affirmed by the First Circuit. In LAMCO II, this court adopted the Special Master's Report and Recommendation stating that "Fania became the initial owner of the statutory copyright upon its inception" with respect to each of the songs. See LAMCO I, No. 96-2312, Docket No. 334, p. 260, 271-73, *adopted by* LAMCO II, 2005 WL 1847013, *aff'd*, 499 F.3d 32 (1st Cir. 2007). Ms. Curet-Velázquez filed timely renewal registrations for all four songs (Docket No. 55, Exh. 1-4), which serve as *prima facie* evidence of copyright ownership.

LAMCO contests plaintiffs' ownership, however, on the basis of a purported assignment of rights – i.e., "transfer" – in 1995 from Mr. Curet-Alonso to LAMCO. (See Docket No. 33, Exh. 2).

**Hilda Curet-Velázquez, et als v. ACEMLA de P.R, et al**                                    Page 8
**Civil No. 06-1014 (ADC/BJM)**
**Report and Recommendation**

Any such assignment, however, is valid only where it is made "without notice" under 17 U.S.C. §205(d). That is, "between two conflicting transfers, the one executed first prevails if it is recorded .... Otherwise the latter transfer prevails if recorded first ... and if taken in good faith, for valuable consideration ... and *without notice of the earlier transfer*." 17 U.S.C. § 205(d). LAMCO does not allege that the 1995 assignment was "without notice," and in fact the Special Master's Report and Recommendation found that "Fania's registration for the original term put LAMCO on inquiry notice as to the earlier transfer ... to Fania; so, LAMCO's later transfer was not 'without notice' under §205(d)." LAMCO I, No. 96-2312, Docket No. 334, p. 273. Thus, the issue has been judicially resolved in plaintiffs' favor.

Faced with this ruling, LAMCO relies on a January 14, 2004 letter from Ms. Curet-Velázquez to purportedly establish that plaintiffs reaffirmed Mr. Curet-Alonso's purported assignment to LAMCO. (See Docket No. 60, p. 3-5). The problem with LAMCO's position is three-fold. First, the letter purporting to reaffirm the assignment was sent two weeks *after* the letter's author, Ms. Curet-Velázquez, filed renewal registrations for *Pueblo Latino* and *Planté Bandera* in her own name on behalf of the heirs of Mr. Curet-Alonso.[4] It seems highly unlikely that plaintiffs would choose to reaffirm the purported 1995 assignment of rights to LAMCO, in exchange for no apparent consideration, just two weeks after renewing registration. Second, the letter lacks any indication as to what "royalties" Ms. Curet-Velázquez is referring. See 17 U.S.C. § 204(a) ("A transfer of copyright ownership ... is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed."). Simply put, the single line of, "In regards to the royalties please send them to me at my address," lacks the specificity of terms that such a reaffirmation of an assignment must contain. Nevertheless, defendants cite to Effects Assocs., Inc. v. Cohen, 908 F.2d 555 (9th Cir. 1990), to support their

---

[4]The other two songs – *Distinto y Diferente* and *Periódico de Ayer* – were not yet up for renewal since they had been copyrighted originally two years after *Pueblo Latino* and *Planté Bandera*.

argument. In that case, the court stated, "If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so. It doesn't have to be the Magna Carta; a one-line pro forma statement will do." Id. at 557. Thus, according to the authority cited by defendants, although such a statement representing a transfer of copyright ownership need not be lengthy, it must at least *state* the intent to transfer copyright ownership. Here, the single-line of the letter relied on by LAMCO simply does not say that what is intended is a transfer of rights *of any kind*, let alone the ownership of the copyrights to the specific songs at issue here. Furthermore, defendants have submitted no other evidence to help explain the meaning of the January 14 letter.

The third problem with LAMCO's theory is perhaps the most important: there was no valid assignment in the first place. This court held that the purported 1995 assignment was not "without notice," and was therefore invalid at its inception. LAMCO fails to demonstrate just how such an invalid transfer can be reaffirmed.

Importantly, LAMCO concedes in its Answer to Plaintiffs' Second Statement of Alleged Material Facts that "Hilda Curet's renewal certificates would only be valid if the District Court under Civil 96-2312 finally finds Fania's purported assignment to be valid, and if this Court finds that the Curet heirs did not reaffirm their father's assignment." (Docket No. 60-2, ¶¶ 5, 7). Since the First Circuit has since affirmed that part of this court's holding in that earlier litigation, and since the purported assignment to LAMCO was invalid under § 205(d), LAMCO has admitted, through the above-quoted statement, that Ms. Curet-Velázquez's renewal registrations were valid. Accordingly, the plaintiffs own the copyrights for the renewal terms of each of the four songs at issue in this case.

## II.     Infringement

The owner of a valid copyright in a musical composition "enjoys exclusive rights to reproduce all or any part of the copyrighted work, prepare a work derivative of it, distribute copies of it, perform or display it, and *authorize others to exercise any of these rights*." Johnson v. Gordon,

409 F.3d 12, 17 (1st Cir. 2005) (emphasis added), *citing* 17 U.S.C. § 106. "One who violates any of these exclusive rights is an infringer of the copyright, and the legal or beneficial owner of the copyright ... may institute an action for infringement against him." Johnson, 409 F.3d at 17, *citing* 17 U.S.C. § 501. Nevertheless, "[m]ere authorization of an infringing act is an insufficient basis for copyright infringement." Latin American Music Co. v. Archdiocese of San Juan, 499 F.3d 32, 46 (1st Cir. 2007), *citing* Venegas-Hernandez v. ACEMLA, 424 F.3d 50, 57-58 (1st Cir. 2005). "Infringement depends upon whether an infringing act, such as copying or performing, has occurred." Archdiocese of San Juan, 499 F.3d at 46, *citing* Venegas-Hernandez, 424 F.3d at 58-59. It is irrelevant whether the infringement was done knowingly or innocently since "copyright infringement does not have a scienter requirement." Lexmark Int'l, Inc. v. Static Control Components, Inc., 387 F.3d 522, 537 (6th Cir. 2004), *citing* Repp v. Webber, 132 F.3d 882, 889 (2d Cir. 1997).

### A.  *Pueblo Latino*

#### 1.  *Hostos Community College Concert*

Plaintiffs move for summary judgment on the claim that LAMCO issued a retroactive license for the performance of *Pueblo Latino* at Hostos Community College. (Docket No. 12). LAMCO disputes that *Pueblo Latino* was performed at the concert, citing a "lack of sufficient information and knowledge to form a belief as to the veracity of [that fact]." (Docket No. 34, ¶ 10). But LAMCO points to no evidence to refute Ms. Curet-Velázquez's deposition testimony that the song was performed at the concert – which she watched. (Docket No. 12, Exh. C, p. 1; Docket No. 34, ¶ 10). Thus, there is no "genuine" issue of fact regarding the performance of *Pueblo Latino*, since no reasonable jury could find – on the evidence present – that the performance did not take place.

To the contrary, the evidence on record shows that the *Pueblo Latino* was performed at the concert, and that LAMCO licensed the performance. This evidence includes a letter from the concert organizers requesting a license from LAMCO and listing *Pueblo Latino* as one of the songs to be

Case 3:06-cv-01014-ADC-BJM   Document 66   Filed 11/21/07   Page 11 of 18

**Hilda Curet-Velázquez, et als v. ACEMLA de P.R, et al**                                                  Page 11
**Civil No. 06-1014 (ADC/BJM)**
**Report and Recommendation**

performed at the concert (Docket No. 1, Exh. C), the license issued to the concert organizers by LAMCO, the payment received by LAMCO in exchange for issuing the license (Docket No. 12, Exh. B), and Ms. Curet-Velázquez's deposition testimony that the song was performed at the concert (Docket No. 12, Exh. C, p. 1). LAMCO concedes that it issued the license and that it held itself out to be the copyright owner for the song. (Docket No. 34, ¶¶ 12, 13). On these facts, there is no genuine issue regarding the fact that LAMCO licensed the performance of *Pueblo Latino* at the Hostos Community College concert, and that the song was actually performed.

Faced with these facts, LAMCO avers that it believed that Ms. Curet-Velázquez authorized it to issue the license and that Ms. Curet-Velázquez partook in "skullduggery" in leading LAMCO to believe this. (Docket No. 33, p. 12). But the evidence does not support this argument. Although LAMCO states that Ms. Curet-Velázquez "called defendants to notify them of an event using songs by her father," it cites to no evidence that such a telephone conversation took place. The actual telephone call to LAMCO was made by the concert organizers, not Ms. Curet-Velázquez. (Docket No. 33, Exh. 7, ¶ 8). And although Ms. Curet-Velázquez gave LAMCO's telephone to the concert organizers at their request, there is no evidence that this action amounted to "skullduggery." Moreover, any mistaken belief by the LAMCO defendants that they were authorized to license the performance is irrelevant to the infringement analysis since there is no scienter requirement. See Lexmark, 387 F.3d at 537; Repp, 132 F.3d at 889. I therefore recommend that plaintiffs' motion for summary judgment on the infringement claim for licensing the performance at the Hostos Community College be **granted**.

### 2. *Harry Fox Agency Licenses*

Plaintiffs also allege that the LAMCO defendants illegally licensed *Pueblo Latino* through the Harry Fox Agency on three separate occasions. The first of these involves the LAMCO defendants issuing a license to MSI of Miami Corporation on November 5, 2004. (Docket No. 55, Exh. 19). Defendants do not challenge the existence of this license, but instead deny the allegation

**Hilda Curet-Velázquez, et als v. ACEMLA de P.R, et al**  Page 12
**Civil No. 06-1014 (ADC/BJM)**
**Report and Recommendation**

because the album on which the song was licensed to be included "is a phono-record produced under the Fania/Sonido label." (Docket No. 60-2, ¶ 23). In so arguing, defendants point to a letter from the Harry Fox Agency stating that it "has blocked both Disco Hit's and Sonido Inc.'s ability to obtain licenses for LAMCO's shares of the compositions in its catalog." (Docket No. 60-2, ¶ 23; Docket No. 60, Exh. 6). Any relevance attached to that letter, however, is negated by the licensing contract executed on the LAMCO defendants' behalf by the Harry Fox Agency stating that LAMCO is to receive one hundred percent of the proceeds (Docket No. 55, Exh. 19), particularly in light of the LAMCO defendants' admission that the song remains available for licensing on their behalf at the Harry Fox Agency (Docket No. 60-2, ¶ 26). Moreover, the letter mentions "Sonido, Inc." whereas the licensing agreement is with MSI of Miami Corporation, and the defendants have failed to make any discernable connection between the two entities – though any such connection would not likely change the outcome here since the evidence clearly shows that LAMCO issued a license (Docket No. 55, Exh. 19) and that a phono-record was produced pursuant thereto (Docket No. 60-2, ¶ 23 (admission that phono-record was produced)). Thus, the plaintiffs have carried their burden of showing a lack of a genuine issue of material fact as to the November 5, 2004 infringement.

The two remaining alleged infringements involving *Pueblo Latino* – which took place on April 28, 2005 and October 18, 2006 – lack supporting evidence, as plaintiffs point only to two half-page computer printouts labeled "License Inquiry Detail," and bearing the Harry Fox Agency name. (Docket No. 55, Exh. 20, 21). Rule 56(e) requires evidence supporting summary judgment contentions be admissible. See Carmona, 215 F.3d at 131. Computer printouts of data compiled in the regular course of business can be admissible under the business records exception to the hearsay rule. United States v. Goodchild, 25 F.3d 55, 61-62 (1st Cir. 1994). But Federal Rule of Evidence 803(6) provides that this exception applies only to reports, records, or data compilations "made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business

**Hilda Curet-Velázquez, et als v. ACEMLA de P.R, et al**  Page 13
**Civil No. 06-1014 (ADC/BJM)**
**Report and Recommendation**

activity to make the ... report, record, or data compilation, all as shown by the *testimony of the custodian or other qualified witness*." Id.

Here, the plaintiffs have not offered any testimony by persons with knowledge of how these documents were generated or recorded, nor have they submitted other evidence to help explain the same. Thus, there is no basis upon which to find that they fit within the business records exception. In addition, this lack of testimony by persons with first-hand knowledge of these two documents means that they have not been properly authenticated pursuant to Rule 56(e) or Federal Rule of Evidence 901. See Carmona, 215 F.3d at 131. Additionally, the plaintiffs have submitted no evidence establishing that a phono-record was produced pursuant to these two licenses. As a result, the plaintiffs have not carried their burden with respect to these two alleged infringements.[5] I therefore recommend that plaintiffs' motion for summary judgment be **granted** as to the November 5, 2004 infringement of *Pueblo Latino*, but **denied** as to the alleged April 28, 2005 and October 18, 2006 infringements of that song.

    **B.**    *Planté Bandera*, *Periódico de Ayer*, **and** *Distinto y Diferente*

Plaintiffs next allege that the LAMCO defendants illegally licensed *Planté Bandera* to third parties through the Harry Fox Agency on three separate occasions. Those three instances include: a purported license issued to the Ruckus Network on or about September 24, 2004; a purported license issued to Microsoft Corp. on or about July 10, 2005; and a purported license issued to Rowe International, Inc. on or about November 29, 2005. (Docket No. 56, ¶¶ 16-18). Similar allegations regarding purported licenses involving *Distinto y Diferente* include purported licenses issued: to Rowe International, Inc. on or about July 6, 2005; to the Microsoft Corporation on or about July 17, 2005; and to Napster, LLC on or about August 22, 2006. (Docket No. 55, Exh. 7-9; Docket No. 56,

---

[5] The allegation in plaintiffs' statement of uncontested facts that copies of the albums "Live at Yankee Stadium" and "Very Best of Salsa" are still being sold lacks sufficient supportive evidence for the same reasons. (See Docket No. 60-2, ¶ 27). Plaintiffs have offered no testimony by persons with knowledge of the accuracy of the documents or how they were generated.

**Hilda Curet-Velázquez, et als v. ACEMLA de P.R, et al**                                                       Page 14
**Civil No. 06-1014 (ADC/BJM)**
**Report and Recommendation**

¶¶ 10-12). The evidence submitted by plaintiffs in support of all six of these alleged infringements consists of unauthenticated half-page computer printouts that do not fit within a hearsay exception. As discussed above, computer printouts of data compiled in the regular course of business can be admissible under the business records exception, Goodchild, 25 F.3d at 61-62, but plaintiffs have offered no testimony by persons with knowledge of how these documents were generated or recorded, nor have they submitted other evidence to help explain the same.  Consequently, the printouts are insufficient to demonstrate, for summary judgment purposes, that the defendants issued the purported licenses, or that the phono-records were even produced.

With respect to *Periódico de Ayer*, plaintiffs rely on listings in a LAMCO royalty report to establish infringement.  Plaintiffs also rely upon the royalty report to support their allegation of infringement involving *Planté Bandera*.  This document, unlike the other printouts submitted by plaintiffs, was authenticated by LAMCO's President, Mr. Raul Bernard.  He testified that the royalty report shows that LAMCO issued licenses to "different recording companies" for the songs *Periódico de Ayer* and *Planté Bandera*, and that recordings were produced pursuant to those licenses. (Docket No. 55, Exh. 5, p. 54-55).  He further testified that "[w]e're getting paid," meaning that LAMCO was receiving payments pursuant to the licenses issued.  Id. at p. 55.  Mr. Raul Bernard's admissions in connection to the data in the royalty report provide sufficient evidence to carry plaintiffs' burden of demonstrating a lack of a genuine issue of fact as to defendants' infringements. There is, however, insufficient evidence to determine the number of the infringements of these songs, and those determinations must be left to future proceedings.

The final allegation as to these two songs is that copies of an album containing the songs *Distinto y Diferente* and *Planté Bandera* continue to be offered for sale pursuant to the LAMCO defendants' licenses.  Plaintiffs rely on a printout of a listing on Amazon.com to prop up this assertion.  (Docket No. 55, Exh. 11; Docket No. 56, ¶ 14).  But plaintiffs have offered no foundational testimony from persons knowledgeable of the printout's contents.  Thus the document

**Hilda Curet-Velázquez, et als v. ACEMLA de P.R, et al**  Page 15
**Civil No. 06-1014 (ADC/BJM)**
**Report and Recommendation**

lacks the evidentiary foundation to fit into the business records hearsay exception or even to be authenticated. As a result, this assertion by plaintiffs carries little weight in support of their arguments.

Given the foregoing, I recommend that plaintiffs' motion for summary judgment on the infringement claims regarding *Planté Bandera* and *Periódico de Ayer* be **granted** with regard to the infringements shown on the royalty report. Specifically, I recommend that the court find that the LAMCO defendants committed at least one infringement with regard to each song. The quantity and nature of the infringements will be addressed at trial as those issues relate to the damages available in regards to these infringements. I further recommend that all other infringement claims regarding those two songs, as well as all infringement claims regarding *Distinto y Diferente*, be **denied**.

### III.  The Willfulness Allegation

Plaintiffs aver that the purported infringements were "willful" under 17 U.S.C. § 504(c). However, since the only infringement claims ripe for summary judgment are: the claim regarding the licensing of the performance of *Pueblo Latino* at the Hostos Community College concert; the claim regarding the license issued to MSI of Miami Corp. for *Pueblo Latino* on November 5, 2004; and the claims regarding the licenses issued as to *Planté Bandera* and *Periódico de Ayer* that appear on the royalty report, the willfulness allegation will be analyzed only with regard to those incidents.

Where an infringement is willful, the statutory damages available to the plaintiff increase from the normal range of between $750 and $30,000 to a sum of not more than $150,000 for each infringement. 17 U.S.C. § 504(c). "Willful," under the statute, means "with knowledge that the defendant's conduct constitutes copyright infringement." Danjaq LLC v. Sony Corp., 263 F.3d 942, 957 (9th Cir. 2001); see also Princeton Univ. Press v. Mich. Doc. Serv., Inc., 99 F.3d 1381, 1392 (6th Cir. 1996); MCA Television Ltd. v. Feltner, 89 F.3d 766, 768 (11th Cir. 1996); RCA/Ariola Intern., Inc. v. Thomas & Grayston Co., 845 F.2d 773, 779 (8th Cir. 1988).

Here, plaintiffs base their allegation of willfulness on the uncontested fact that "Defendants

litigated and lost its [sic] claim of ownership for each of the ... songs during its respective original term of copyright." (Docket No. 56, ¶ 31; Docket No. 60-2, ¶ 31). But plaintiffs' reliance on this fact is misplaced since, at the time of the infringements, the LAMCO defendants were appealing the ruling by this court regarding the copyright ownership of *Pueblo Latino*, an appeal which was not decided until August 2007. See Archdiocese of San Juan, 499 F.3d at 37. Defendants in that lawsuit took the position that the original term for the copyrights did not commence until 1995. (See Docket No. 55, Exh. 5, p. 56). However misplaced defendants' position may have been, the fact remains that there was not yet a final judicial determination of the issue when LAMCO issued the licenses. (See Docket No. 55, Exh. 17 (royalty report generated in January 2006; all licenses related to the songs contained therein were issued prior to that date)). Because plaintiffs submit no additional evidence on the issue, there is insufficient evidence in the record to dispose of the issue on summary judgment. I therefore recommend that plaintiffs' motion for summary judgment regarding the willfulness of the infringements be **denied**.

### IV.    Hilda Curet-Velázquez's Deposition

Finally, the LAMCO defendants argue that they have not yet had a chance to finalize the deposition of Ms. Curet-Velázquez, and that summary judgment would therefore be premature. (Docket No. 33, p. 13). Plaintiffs aver that the LAMCO defendants already had the opportunity to depose Ms. Curet-Velázquez, that they terminated the deposition at 2:30 p.m. by their own choice, and that they do not identify any specific facts that they would purportedly acquire a knowledge of as a result of further deposing Ms. Curet-Velázquez. (Docket No. 41, p. 2-3; Exh. H, p. 94-95).

It is within this court's discretion whether to grant a request to conduct additional discovery on summary judgment. Fed.R.Civ.P. 56(f). A litigant seeking additional time for discovery in order to respond to a motion for summary judgment "must submit to the trial court an affidavit or other authoritative document showing (i) good cause for his inability to have discovered or marshalled the necessary facts earlier in the proceedings; (ii) a plausible basis for believing that additional facts

**Hilda Curet-Velázquez, et als v. ACEMLA de P.R, et al**  Page 17
**Civil No. 06-1014 (ADC/BJM)**
**Report and Recommendation**

probably exist and can be retrieved within a reasonable time; and (iii) an explanation of how those facts, if collected, will suffice to defeat the pending summary judgment motion." Rivera-Torres v. Rey-Hernández, 502 F.3d 7, 10 (1st Cir. 2007). The LAMCO defendants have not pointed to a single particular fact they would seek to establish if given the opportunity to further depose Ms. Curet-Velázquez, let alone how any such fact would suffice to defeat summary judgment. I therefore recommend that this court **deny** the LAMCO defendants' request to defer ruling on the summary judgment motion pending further discovery.

## CONCLUSION

In view of the foregoing, I recommend that plaintiffs' Motion for Summary Judgment be **GRANTED** as to: 1) the copyright infringement claim regarding the licensing of the performance of *Pueblo Latino* at the Hostos Community College concert and that copyright infringement claim regarding the license issued to MSI of Miami Corp. for *Pueblo Latino* on November 5, 2004; and 2) the copyright infringement claims regarding the licenses issued as to *Planté Bandera* and *Periódico de Ayer*, which are shown in the LAMCO royalty report. With regard to the *Planté Bandera* and *Periódico de Ayer* infringements, I recommend that the quantity and nature of the infringements be addressed at trial as those issues relate to the damages available in regards to these infringements. I further recommend that the Motion for Summary Judgment be **DENIED** as to all other claims.

The parties have ten (10) business days to file any objections to this report and recommendation. See Local Rule 72(d); 28 U.S.C. § 636(b)(1). Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4, 6 (1st Cir. 1986); see also Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout

**Hilda Curet-Velázquez, et als v. ACEMLA de P.R, et al**                                                          Page 18
**Civil No. 06-1014 (ADC/BJM)**
**Report and Recommendation**

punch for the second round.").

        **IT IS SO RECOMMENDED**.

In San Juan, Puerto Rico, this 21st day of November, 2007.


                                            **S/Bruce J. McGiverin**
                                            BRUCE J. McGIVERIN
                                            United States Magistrate Judge